## Millheim Borough v. Commonwealth

*John R. Miller, Jr.,* for appellant.
*Michael Alushin,* contra.

WATERS, *Member,* May 24, 1974—This matter comes before the board on appeal from the denial of a permit authorizing construction of a new water impoundment proposed by appellant Millheim Borough. The permit was denied because the proposal did not include filtration for the water supply. Presently appellant obtains its water from a reservoir some 2,000 feet downstream from the area in which the new construction is to take place. The old supply area is not filtered, but departmental regulations require filtration of "all new sources" of water supply. Appellant argues that the "source" of the water is the watershed, and this will remain the same, and is therefore not a new source, requiring filtration.

## FINDINGS OF FACT

1. The Borough of Millheim is located in Centre County, Pennsylvania, and has a population of approximately 900 people who reside in approximately 300 to 310 homes.

2. The borough has been supplied with water from the Phillips Creek watershed since 1905.

3. The existing system consists of a masonry dam located approximately 2,000 feet from the confluence of Phillips Creek with Elk Creek in the narrows and is approximately 100 feet wide and 300 feet long.

4. Insufficient pressure is provided by the pres-

ent system which results in approximately ten percent of the homes in the borough having little or no water available during the peak times water is in use.

5. Also because of lack of pressure under the present system, there is insufficient fire protection in at least two-thirds of the borough.

6. The borough proposes to construct a new onstream impounding reservoir to be located approximately 2,000 feet upstream from the existing reservoir.

7. The proposed impoundment will be 200 feet wide and 200 feet long and will approximately double the present water supply of one million gallons for the borough.

8. The proposed impoundment is intended to correct the pressure problems and provide adequate water and fire protection for the entire borough.

9. Upon application, a permit was issued for the construction of the proposed impoundment on September 18, 1972, by the Bureau of Dams and Encroachments.

10. Borough council then voted to proceed with construction, specifications were prepared, bids were taken and application was made to the Department of Environmental Resources for a permit to construct and utilize the new impoundment in May, 1973.

11. By letter dated December 7, 1973, the borough was informed that its application had been denied, the reason given for the denial was that the Department of Environmental Resources considered the proposed new reservoir to be a new source and that, therefore, under section 109.51 of the department's rules and regulations both filtra-

tion and disinfection are required prior to use of water.

12. No filtration system was included in the proposed new impoundment.

13. The total cost for the borough's proposed impoundment which does not include filtration is $90,000 which included financing and all other associated costs.

14. The estimated construction cost of a filtration system and appurtenances is $299,000 to which must be added $56,000 for engineering, inspection, legal and contingency costs making a total of $355,000. In addition, at five percent, over 40 years the annual financing costs would equal $21,044.

15. The quality of water in the new impoundment will be the same as the quality of water in the present one.

16. The Department of Environmental Resources' rejection of the borough's application for a permit was based solely on the department's administrative requirement that new sources must have filtration and not because of any present known threat to the protection and preservation of the health of the citizens of the Borough of Millheim.

17. Access to the borough impoundments is limited to hikers over Brush Mountain and a private road which is chained off and posted with no trespassing signs.

18. The Pennsylvania Fish Commission reviewed the plans for the proposed impoundment and determined that it would have no recreational value because of the small size of the pool and the absence of satisfactory public access.

19. The Phillips Creek Watershed area is remote in nature, mountainous, completely forested, and separated from the valley by ridges on both sides.

20. No power is available in the watershed area because the only power line is a 46,000-volt line owned by West Penn Power which runs across it. For power to be available, a substation would have to be built.

21. Eighty percent of the property in the watershed is owned by one individual and known use of the watershed area is limited to hunting.

22. The Department of Environmental Resources does not require filtration of existing surface water facilities.

23. The Department of Environmental Resources has the power and duty to require municipalities to correct any problems which pose a danger to the public water supply.

24. The Department of Environmental Resources can require the Borough of Millheim to install filtration facilities at any time in the future if the water system is no longer potable and safe for the public.

25. Denial of the borough's application for a permit and the requirement of a filtration system may result in the abandonment of the project to improve the water system, and fire protection.

26. Filtration is a mechanism for removing turbidity from water served in public water supplies.

27. Turbidity may interfere with effective disinfection of public water supplies because bacteria and other pathogenic organisms become lodged in the turbidity and are shielded by the turbidity from disinfecting agents.

28. Human activities on a watershed, such as

recreation, cabins, powerlines and construction, tend to increase the turbidity of surface sources located on the watershed.

29. The United States Environmental Protection Agency ("EPA") has promulgated on March 21, 1971, a policy urging that all surface sources of water supply should be provided with filtration.

## DISCUSSION

It is often easier to impose regulations which contain irrebuttable presumptions, than to consider each case on its own merits. Because it is easier, the temptation is great. I believe, however, that justice demands and is better achieved by placement of the burden of proof and the raising of rebuttable presumptions. The regulation at issue in this case, in my opinion, raises an irrebuttable presumption.

Our Supreme Court has recently taken a dim view of legislative enactments which in effect raise such irrebuttable presumptions. Such presumptions become in effect, rules of law. In Cleveland Bd. of Education v. La Fleur, 414 U.S. 632, 94 S. Ct. 791 (1949), the court was there called upon to decide whether a school regulation which required all pregnant teachers to stop teaching after five months and to return only after the child was three months old. The court there said:

"The mandatory termination provisions of the Cleveland and Chesterfield County rules surely operate to insulate the classroom from the presence of potentially incapacitated pregnant teachers. But the question is whether the rules sweep too broadly. See Shelton v. Tucker, 364 U.S. 479, 81 S. Ct. 247, 5 L.Ed.2d 231. That question must be answered in the affirmative, for the provisions

amount to a conclusive presumption that every pregnant teacher who reaches the fifth or sixth month of pregnancy is physically incapable of continuing. There is no individualized determination by the teacher's doctor—or the school board's— as to any particular teacher's ability to continue at her job. The rules contain an irrebuttable presumption of physical incompetency and that presumption applies, even when the medical evidence as to an individual woman's physical status might be wholly to the contrary.

"...

"The Cleveland rule, however, does not simply contain these reasonable medical and next-semester eligibility provisions. In addition, the school board requires the mother to wait until her child reaches the age of three months before the return rules begin to operate. The school boards have offered no reasonable justification for this supplemental limitation, and we can perceive none. To the extent that the three months provision reflects the school board's thinking that no mother is fit to return until that point in time, it suffers from the same constitutional deficiencies that plague the irrebuttable presumption in the termination rules."

The regulation here in question, in my opinion, has established the presumption that all new surface water sources are in some way inimical to the public health and/or safety. If at least this much is not conceded, the question is: where does the authority to so regulate have its basis if not in the police power of the State? If such water sources are inherently a danger to public health, why limit the effect to new sources. The only reasonable conclusion that can be garnered from the facts of

record, is that some surface water sources present a danger to public health due to high turbidity. This brings us to the Cleveland Board of Education case supra. It is unreasonable to create an irrebuttable presumption when there is no showing of clear necessity. The need should be patent, or the proof clear, for such presumptions to pass the test of reasonableness. In applying the regulation to the Borough of Millheim, the reason why such presumptions are questionable becomes obvious.

We cannot avoid the cost-benefit test in this case, no matter how hard we try. It is often argued that such consideration has no place in matters concerning public health. That sounds laudable but in fact it is unrealistic. Because of the economic system under which we live, the question— "How much does it cost?" is seldom irrelevant and, indeed, often controlling.

The Borough of Millheim would like to increase its water pressure by moving to a higher elevation on the same body of water, 2,000 feet upstream. The purpose is to insure adequate water pressure for fire protection which is inadequate in the higher elevation of the borough. The cost of this needed project is $90,000. The department has raised no question concerning the public health, turbidity or improper treatment of the present surface water supply. Indeed, the department does not seriously argue that there is any measurable difference in the water presently used and the new source which appellant proposes to use. The fly in the ointment is Regulation 109.51, which requires filtration of *all new* water sources. Despite the fact that water will come from the same watershed and the exact same body of water, we agree with the department that this is a new water source. We reach this conclusion because the term "source" is

defined in the Regulations (109.1) to include a reservoir or a pond. It is not disputed that this is to be a new reservoir for the appellants water supply.

This brings us to the question of whether the regulation requiring filtration is unreasonable or arbitrary in any way. The department has persuasively argued that turbidity is reduced by filtration, and many authorities believe this is a desirable goal. The difficulty with this argument is that there is no showing that the turbidity is excessive or that it will be in the future. To put the case in proper perspective, appellant is placed in a position which would prohibit it from showing that the water source does not have excessive turbidity, and that it meets all other State requirements. The department would have us say that it is reasonable to require this small municipality to spend $355,000 for a filtration system without any showing of a problem for which this expenditure would offer a solution. We refuse. In short, the cost is clear, the benefits are obscure or non-existent, and this must be considered in order to make any reasoned determination in regard to the regulation in question.

It is not a function of the board to rewrite regulations of the Department or to second guess the Environmental Quality Board. Where, however, a regulation is written so as to require the expenditure of $355,000 to solve a turbidity problem not shown to exist or reasonably certain to occur, it is our duty to declare the same to be unreasonable as applied to the facts of the case.

## CONCLUSIONS OF LAW

1. Department of Environmental Resources' Regulation 109.51c requires that infiltration be required for all new surface water sources.

2. Under Department of Environmental Resources' Regulation 109.1 the Borough of Millheim's proposed impoundment will be a new water source.

3. The requirement of the Borough of Millheim to provide filtration as part of its proposed new impoundment is unreasonable as applied to appellant and the facts of this case.

4. The cost of a filtration system would be excessive in view of the nature of the community of Millheim and the lack of a present showing of need for filtration.

5. Section 109.51c's requirement to provide filtration for "all" new surface water sources precludes inquiring into the particular pollution or economic factors which pertain to the proposed new impoundment and therefore creates an irrebutable presumption and is unreasonable as applied to the facts of this case.

## ORDER

And now, May 24, 1974, after due consideration, the appeal of Millheim Borough is hereby sustained, and the department is ordered to issue a permit for which the application was previously denied, and said permit shall not require filtration.

## OPINION CONCURRING IN PART
## AND DISSENTING IN PART

COHEN, *Member,* and BROUGHTON, *Chairman*, May 24, 1974—I concur with the order in this matter, but do not agree with the reasoning supporting it. The relevant principles of administrative law require this board to uphold the regulation

under attack in this case, 25 Pa. Code §109.51, which reads, in pertinent part, as follows:

"(c) All new sources using surface water, and existing sources used for recreational purpose, shall be provided with filtration and disinfection facilities."

Under section 3 of the Act of April 22, 1905, P. L. 260, as amended, 35 P.S. §711, et seq., a permit from the Department of Environmental Resources is necessary for, inter alia, additional sources of public water supply. Under the provisions of section 1918-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §510-18, the Department of Environmental Resources is given the authority, previously held by the Department of Health, to issue water works permits and stipulate therein the conditions under which water may be served to the public. Under its authority to issue water works permits and stipulate therein the conditions under which water could be served to the public, the department adopted the regulation above referred to.

It is clear from the foregoing that the department has the authority to adopt such a rule and regulation and to require that permits issued for water works be so conditioned. The record indicates that there is a reasonable relationship between the requirement of filtration and the protection of public health in regard to public water supplies. Water of high turbidity reduces the effectiveness of disinfection, thereby increasing the likelihood that pathogenic organisms may escape the disinfection process. This, alone, is a valid reason for adopting the regulation under challenge in this case. The board should not lightly rule a regu-

lation of the Department of Environmental Resources clearly authorized under relevant legislation to be unconstitutional except for compelling reasons. Furthermore, inasmuch as the underlying legislation, supra, clearly authorizes this regulation, it would be necessary to hold such legislation unconstitutional before holding the regulation unconstitutional. The burden is on appellant in this case to establish by clear and convincing evidence that the regulation is unconstitutional. This they have not done.

However, I am persuaded that under the unique circumstances of this case, the impoundment contemplated to be constructed is not a "new source" as that term is used in section 109.1 of the regulation. Section 109.1 of the regulation defines source as "[a] well, spring, cistern, infiltration gallery, stream, reservoir, pond or lake from which, by any means, water is taken either intermittently or continuously for use by the public." Clearly the stream in this case which supplies the existing impoundment with water for the water supply is a source under this definition. Whether the new impoundment is a new source, given the fact that it is on the same stream, and unlikely to affect in any way the existing quality of the water being now served to the borough, is a highly debatable point. The unique facts of this case impel me to the conclusion that the existing stream is the source of supply in this case and not the proposed impoundment. Had the department exercised its discretion rather than blindly applying the definition in this case, it is clear that the permit would have been granted without the need for filtration. The stream is of low turbidity within the accepted limits of public health authorities in existence at the time the application was made, and the impoundment

will not increase the turbidity of the water being supplied to the borough. For these reasons, it was incumbent upon the department to look at the definition of source, and decide realistically whether in this case the stream or the impoundment was the source. It is clear to me that had they done so and had they examined the ramifications of the appellant's application, the department would have concluded that the permit should have been granted. I believe, therefore, that the proposed impoundment is not a new source using surface water, but that the stream in question is the source. I would therefore grant the permit on the basis that it is not a new source contemplated by the regulation. It is emphasized that we are not saying that the same conclusion relative to the application of what constitutes a "source" to be applicable in all cases. This decision relates to the exercise of departmental discretion in applying the definition of "source" and is limited to the unique circumstances of this case.